United States Court of Appeals
FOR THE EIGHTH CIRCUIT

_____

No. 97-1194MN

_____

Shirley Ziegler,                          *
                                          *
          Appellant,                      *
                                          *
     v.                                   *
                                          *  On Appeal from the United
                                          *  States District Court for
Beverly Enterprises-Minnesota, Inc.,      *  the District of
a California Corporation, doing           *  Minnesota.
business as Woodrest Healthcare           *
Center, doing business as Woodrest        *
Nursing Home,                             *
                                          *
          Appellee.                       *

_____

Submitted: October 23, 1997
Filed:  January 12, 1998

_____

Before RICHARD S. ARNOLD, Chief Judge, LOKEN and HANSEN, Circuit Judges.

_____

RICHARD S. ARNOLD, Chief Judge.

Shirley Ziegler appeals from the District Court's[1] order granting summary judgment in favor of defendant Beverly Enterprises-Minnesota, Inc., dismissing her

_____

[1]The Hon. Donald D. Alsop, United States District Judge for the District of Minnesota.

claims that she was fired because of her age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-34 (1994), and the Minnesota Human Rights Act (MHRA), Minn. Stat. § 363.03 (1997). A review of the record persuades us that the District Court did not err. We therefore affirm.

## I.

In 1993, at age 61, Shirley Ziegler was terminated from her position as administrator of Woodrest Nursing Home by Beverly Enterprises-Minnesota, Inc., a company which owns and operates nursing homes. Ziegler had worked at Woodrest since before it opened in 1967. In 1972, Ziegler became administrator, a position she held until her termination. From 1967 to 1982, Woodrest was privately owned by Ziegler's now-deceased husband. Contemporary Health Corporation bought Woodrest in 1982. In 1983, Beverly bought Woodrest.

When Beverly purchased Woodrest, it appointed an Area Manager to supervise and evaluate the performance of a number of nursing home administrators. In Ziegler's first performance review in 1984, she received a good overall evaluation, meeting or exceeding expectations in most of the reviewed areas. Ziegler was informed, however, that she should "display a greater sense of cooperation with consultants - needs to display a greater awareness of subordinates [sic] worth as supervisors and as part of the team." Appellant's App., Ex. 5. The evaluation included a short list of future objectives for Ziegler, one of which included "develop[ing] supervisor's leadership skills." Id.

Ziegler's 1985 evaluation was similar to the one she received in 1984. The overall review was positive, but the Area Manager noted that "Shirley needs to spend greater efforts in developing staff through delegation and teaching. Holds operations too close to the chest. Teach, train and develop." Appellant's App., Ex. 6. One of the

three objectives given Ziegler for the coming year was improvement in employee relations.  Id.  The record contains no evaluations for 1986 and 1987.

In 1988, Beverly implemented a numerical "grading" system, with a "5" representing "outstanding--substantively exceeds job requirements"; a "4," "above expectations--exceeds most job requirements"; a "3," "meets expectations--satisfactorily meets job requirements"; a "2," "minimum expectations--barely meets minimum job requirements"; and "1," "below expectations--fails to meet minimum job requirements."  On this new evaluation form, Ziegler received mostly threes and fours and an overall evaluation of above average.  Appellant's App., Ex. 7.

Wes Hodges became Ziegler's supervisor in 1989.  Hodges's first evaluation of Ziegler consisted mostly of threes and fours.  In the areas of "[i]s accessible to employees and helpful in resolving their problems," "[d]elegates work to employees consistent with their ability to accept it," and "[e]stablishes good working relationships with other dept. and admin. staff," however, Ziegler received two twos and a two and a half, respectively.  Appellant's App., Ex. 8.  Hodges identified the need to "enhance employee relations and communications" as the second most important and mutually agreed upon objective for Ziegler to accomplish in the next year.  Id.

Accompanying Ziegler's 1990 performance evaluation is an interoffice memorandum from Hodges to Ziegler in which he states that

> [t]his is a difficult evaluation in that it reports a slippage from prior evaluations. . . .  [T]he primary area of concern is associate relations. This is an area that must improve during 1991.  It was and continues in 1991 as one of the company goals.  Our area management team is ready to assist you and Woodrest in improving this critical area. . . .

Appellant's App., Ex. 9. While Ziegler's strengths were still noted, the evaluation was considerably more negative than in the past. Ziegler received a one in the area of "[i]nspires employees to perform in an outstanding manner." Id. Hodges's written comments state "[a]rea of critical concern - autocratic magement [sic] style." Id. In conjunction with the category evaluating "[i]s accessible to employees and helpful in resolving their problems," Hodges noted that "associates [are] reluctant to discuss due to unperdictable [sic] attitude." Id. Ziegler received twos in the areas of "[d]elegates work to employees . . ." and "[e]stablishes good working relationships with other dept. and admin. staff." Id. Hodges's written comments included "[Ziegler] [h]as not allowed Dept. Mgr's. freedom to manage their depts." and "[m]anagement style inhibits good relationships." Id. The objectives section stated "[e]nhance employee relations: Numerous associate complaints," and it was noted that this objective had not been met during the appraisal period. Id.

Hodges's memo to Ziegler in conjunction with her 1991 performance review includes high praise for Woodrest's financial performance and "outstanding . . . improvement . . . in the collection of past due receivables." Appellant's App., Ex. 12. As a result of these successes, Hodges indicated that Woodrest had the potential to receive the Beverly Enterprises E-Award for excellence. However, Hodges also discussed the largely negative sentiments expressed by employees in an "Associate Attitude Survey" conducted by Beverly. Hodges expressed concern about Ziegler's troubles with associate relations and her failure to improve in this area. In the memorandum introducing the evaluation Hodges wrote:

> The recently completed Associate Attitude Survey points out several areas of continuing concern. We view this as a very serious deficiency. This is particularly important in light of our emphasis on associate relations during the past two years. Three areas are of primary concern: consistent and fair application of rules and policies; open and honest communications; facility work atmosphere.

As the top management representative at Woodrest it is your responsibility to see that these areas of concern are corrected. In our discussion today I will be offering several suggestions to assist you. I urge you to consider them seriously.

It is our current intention to conduct a follow up Associate Attitude Survey in approximately six months. Significant improvement will be expected. If necessary a follow up performance evaluation will also be given at that time. Consideration of a salary adjustment will be dependent upon improvement is [sic] associate relations. Our human resources staff, area consultants and I are all available to assist you in meeting the objective of improved associate relations.

Appellant's App., Ex. 11. The performance evaluation noted improvement in Ziegler's planning and scheduling performance but reflected the serious concern expressed in Hodges's memo. Ziegler received several twos and a one, all in areas addressing leadership abilities and employee relations. In his overall evaluation, Hodges again rated Ziegler's performance as unsatisfactory.

The follow-up Associate Attitude Survey indicated that in spite of Woodrest's subsequent receipt of the E-Award and its potential to win it again in 1993, little had changed with regard to employee dissatisfaction at Woodrest. In his memorandum to Ziegler accompanying her 1992 performance evaluation, Hodges directed her to take ten specific steps in a final attempt to ameliorate her leadership skills and her standing as an administrator among her fellow employees. Hodges concluded the directive by stating:

The actions outlined in this memorandum are intended to assist you in resolving the management concerns that have been expressed by the associates at Woodrest. Actual resolving of the stated associate concerns remains your sole responsibility.

The continuation of the associate concerns is a serious matter. You need to be aware and understand that this performance evaluation is a final warning. Further, your failure to comply with any of the actions required in this memorandum may result in your immediate discharge.

Appellant's App., Ex. 14. Ziegler received several ones and twos on this evaluation, with written comments reflecting the poor results of the Associate Attitude Survey. Hodges gave Ziegler an overall unsatisfactory rating. Id.

On April 27, 1993, Hodges wrote to Beverly's Regional Director of Human Resources and Vice President of Operations to "request and recommend[] that permission be secured from our corporate office to terminate the employment of Shirley Ziegler. . . . Associate relations and associate morale are at an all time low as a result of the management style of Mrs. Ziegler." Hodges then provided some background about Ziegler's employment history and discussed his view that her performance had deteriorated. He provided specific examples of faults, and based his recommendation of termination on her leadership style. Appellant's App., Ex. 16. In May of 1993, Ziegler was offered the choice to resign or be terminated. After failing to resign, she was terminated.

Ziegler filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), which was cross-filed with the Minnesota Human Rights Commission (MHRC). The EEOC investigated, and both the EEOC and the MHRC issued right to sue letters. Ziegler filed suit claiming that Beverly terminated her because of her age, in violation of the ADEA and MHRA, and in breach of an employment contract. The District Court granted Beverly's motion for summary judgment, holding that Ziegler failed to establish a prima facie case because of failure to produce evidence that she was performing her job at a level commensurate with her employer's legitimate expectations. The Court also held that Beverly articulated a

legitimate reason for the termination, and that Ziegler failed to adduce sufficient evidence that the proffered reason for the termination was not the real reason.

On appeal, Ziegler asserts that comments and questions directed to her about retirement during the same years in which her evaluations deteriorated raise an inference of a discriminatory motive for the termination. She also contends that the strong financial performance of the facility during these years undermines Beverly's claim that she was not fulfilling its expectations. We believe, to the contrary, that the record amply supports the conclusion that Beverly terminated Ziegler for her failure in the area of associate relations, and fails to raise a genuine issue of material fact that Beverly terminated Ziegler because of her age.

II.

To establish a claim under the ADEA, a plaintiff must show that her employer intentionally discriminated against her. Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 775 (8th Cir. 1995). To avoid summary judgment in a case in which there is no direct evidence of intentional discrimination, plaintiff must establish a prima facie case of age discrimination by producing evidence that (1) she is a member of a protected age group; (2) she was performing her job at a level that met her employer's legitimate expectations; (3) she was discharged; and (4) she was replaced by a younger person. See id. at 776. Once the plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the employment decision. Id. at 776-77. If the employer provides a non-discriminatory reason, the presumption of discrimination disappears, and the burden shifts back to the plaintiff to show that discrimination was the true reason for the employment decision. Id.

III.

The District Court correctly determined that there was no genuine issue of material fact as to whether Ziegler failed to perform her job at a level that met Beverly's legitimate expectations. Ziegler contends that because she was rated favorably overall in her 1988 and 1989 evaluations, and continually received high marks for her financial management skills, as evidenced in particular by the E-Awards, she satisfied Beverly's legitimate expectations. We disagree. Ziegler's evaluations are replete with comments directed towards Beverly's dissatisfaction with Ziegler's leadership and interpersonal skills. Financial management is an important skill for an administrator, but an employer may legitimately place equal or greater importance on leadership and people skills.

Ziegler relies on Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326 (3d Cir. 1995). Although we find similarities between the cases, the differences are significant. Mr. Brewer, who was a salesperson for Quaker State for 24 years, was fired in 1992 in spite of the fact that he had received overall ratings of "competent" in his past five evaluations, and was the only salesperson in the Detroit region to exceed his sales quota, and to receive a sales bonus in 1991 and 1992. Id. at 329-30. Quaker State's reasons for the firing were that Brewer had "continuous performance problems, including poor follow-up on customer requests, poor communications with clients and with management, [spent] too little [time] in his territory and [submitted] late and ambiguous sales reports." Id. at 330. There was also evidence that Brewer had demonstrated these types of deficiencies throughout his tenure at Quaker State. However, in light of Quaker State's Executive Vice President of Sales' statements that "sales volume is 'extremely important in evaluating a salesperson,' and represents 'the best simple measure' of a salesperson's performance," the Third Circuit held that

Brewer had met his prima facie case and raised an inference of pretext.[2]  Id. at 331-32 (citation to record omitted).

We are of course not bound by Brewer, which comes from another circuit.  Even if we were, it would not require a holding for the plaintiff on this record.  Ziegler's problems communicating and relating with her staff conflicted with Beverly's stated performance goals for her.  There is no evidence that Beverly believed financial skills were either the most important standard of her job performance or the best simple measure of a supervisor's performance. Thus, Woodrest's receipt of the E-Award is not analogous to the sales bonuses awarded to Brewer.  Rather, Ziegler's problems diminished her effectiveness as a supervisor.  Beverly documented this deficiency as a growing concern, and the employee-attitude surveys contributed to and reinforced this view. The District Court correctly determined that Ziegler failed to establish a prima facie case of age discrimination.

In addition, we agree with the District Court that Beverly offered a legitimate, non-discriminatory reason for her termination:  Ziegler's poor reviews over a significant period.  The Court then examined whether Ziegler raised a factual question that the poor reviews were pretextual reasons for her termination.  Ziegler states that on four occasions over a period of three years she was asked by Hodges about her plans for retirement.  She contends that these questions about retirement, in combination with her poor evaluations in the same years that Woodrest was receiving the E-Award, suggest age-based animus on the part of Beverly.  We think not.  Ziegler's difficulties with leadership and interpersonal skills were noted as early as 1984, and resulted in negative performance evaluations beginning in 1990.  From 1990 forward, Ziegler was on notice that a favorable review was dependent on improvement in these problem areas.  Each review was accompanied by offers of assistance from consultants and Beverly's human resources staff.  Hodges's suggestions to Ziegler to consider retiring, in our view, show

---

[2]The Court also rested its decision on substantial evidence of age animus.

no more than that Hodges wanted Ziegler to leave Beverly.[3]  Retirement would have been an easier and less contentious option, at least from the employer's viewpoint, than termination.  We do not think that suggesting retirement to an employee who is eligible for retirement, and who is not performing satisfactorily,  provides a reasonable basis for inferring age discrimination.

Affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[3]Ziegler analogizes the questions and comments Hodges directed to her about retirement to the evidence of age animus presented by prevailing plaintiffs in  Hudson v. Normandy Sch. Dist., 953 F.2d 410 (8th Cir. 1992), Radabaugh v. Zip Feed Mills, Inc., 997 F.2d 444 (8th Cir. 1993), and Kehoe v. Anheuser-Busch, Inc., 995 F.2d 117 (8th Cir. 1993).  Without discussing in detail the distinguishing aspects of these cases, we observe that each turned on evidence of age animus significantly greater than that offered by Ziegler.