# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2052

_____

| | |
|---|---|
| Marvin L. Fisher, | * |
| | * |
| Appellant, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * Southern District of Iowa. |
| Pharmacia & Upjohn, | * |
| | * |
| Appellee. | * |

_____

Submitted:  March 17, 2000

Filed:  September 5, 2000

_____

Before WOLLMAN, Chief Judge, McMILLIAN, and MORRIS SHEPPARD
ARNOLD, Circuit Judges.

_____

WOLLMAN, Chief Judge.

Marvin L. Fisher appeals from the district court's entry of summary judgment in favor of his employer, Pharmacia & Upjohn, on his claims of discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., and the Iowa Civil Rights Act (ICRA), Iowa Code § 216.6.  We reverse and remand for further proceedings.

**I.**

We recite the facts in the light most favorable to Fisher. From 1966 to 1995, Fisher worked as a sales representative for the Upjohn Company, selling animal health products to various types of customers. During this time, Fisher consistently received average or above-average performance evaluations and on seven separate occasions received the company's national sales award. By 1995, Fisher sold primarily to large corporate livestock facilities and was Upjohn's senior sales consultant of national accounts.

In 1995, Upjohn merged with Pharmacia, Inc. to form Pharmacia & Upjohn (hereinafter Pharmacia). Shortly thereafter, Pharmacia reorganized its animal health division, in which Fisher worked, into several specialized sales units, with each unit focusing on a particular segment of the market, and instituted a new, team-based sales methodology within each unit. Because of Fisher's experience in selling to corporate livestock facilities, he was assigned to the corporate sales unit, which sold to large corporate swine operations. The corporate sales unit was designed to be Pharmacia's top sales unit, with its salespersons being held to the highest standards of performance. Corporate sales unit employees were expected to possess extensive product knowledge and to prepare detailed business plans and market analyses.

In January 1997, after nearly a year in the corporate sales unit, Fisher was transferred to the pork sales unit. As a basis for the transfer, Pharmacia cited Fisher's inability to meet the expectations it had of corporate sales unit employees. Fisher's supervisor in the corporate sales unit, Ed Noe, stated that Fisher lacked sufficient product knowledge to capably sell to corporate swine facilities, that his written and spoken correspondence with customers was replete with grammatical errors, and that he exhibited unprofessional behavior during sales calls, frequently talking more about social issues than the products he was selling. In addition, Pharmacia cited a poor rating that Fisher had received on his 1996 performance evaluation, noting that he

received only 160 out of 420 possible points under its newly adopted evaluation system. Fisher was 60 years of age at the time of the transfer.

Upon his transfer to the pork sales unit, Fisher was required to relinquish his corporate sales unit accounts. These accounts were then reassigned to Ron Kulwicki and Dennis McKilligan, both of whom were younger than Fisher. As a member of the pork sales unit, Fisher was given less responsibility than he had had as a part of the corporate sales unit. He no longer worked directly with corporate swine operations, instead selling to small veterinary operations, and was responsible for a smaller sales territory.

On November 24, 1997, Fisher filed suit against Pharmacia, claiming that his transfer was in essence a demotion and that it had been motivated by age-based animus in violation of the ADEA and ICRA.[1] The district court granted summary judgment in favor of Pharmacia. The court assumed without deciding that Fisher had established a prima facie case of discrimination, but found that Fisher had failed to make a sufficient showing that Pharmacia's proffered reasons for transferring Fisher were pretextual or that his transfer was motivated by age-based animus. This appeal followed.

## II.

We review a grant of summary judgment de novo. See Allen v. Interior Constr. Services, Ltd., 214 F.3d 978, 981 (8th Cir. 2000). Summary judgment is proper where the evidence, when viewed in the light most favorable to the nonmoving party, indicates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. See id.; Fed.R.Civ.P. 56(c).

---

[1]Fisher also brought claims of breach of contract, libel per se, slander, and intentional infliction of emotional distress, but he voluntarily dismissed these claims early in the case and they are not at issue in this appeal.

The ADEA makes it unlawful for an employer to discriminate against an employee on the basis of the employee's age.[2]  See 29 U.S.C. § 623(a)(1).  Because the parties agree that Fisher's claims are based on circumstantial evidence, rather than direct evidence, we apply the burden-shifting scheme of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973).  See Regel v. K-Mart Corp., 190 F.3d 876, 879 (8th Cir. 1999); Hindman v. Transkrit Corp., 145 F.3d 986, 990 (8th Cir. 1998).  Under this framework, Fisher must first establish a prima facie case of age discrimination.  See Regel, 190 F.3d at 879.  If Fisher makes this showing, the burden of production shifts to Pharmacia to articulate a legitimate, nondiscriminatory reason for any adverse employment action taken against Fisher.  See id.  If Pharmacia puts forth such a reason, Fisher must then present evidence sufficient to raise a question of material fact as to whether Pharmacia's proffered reason was pretextual and to create a reasonable inference that age was a determinative factor in the adverse employment decision.  See Keathley v. Ameritech Corp., 187 F.3d 915, 919 (8th Cir. 1999).  At all times, the burden of persuasion remains with Fisher.  See id.

## A.  Prima Facie Case

To establish a prima facie case of discrimination under the ADEA, Fisher must show that: (1) he is a member of a protected age group; (2) he was performing his job at a level that met his employer's legitimate expectations; (3) he was demoted; and (4) he was replaced by a younger person.  See Hindman, 145 F.3d at 990; Johnson v. Runyon, 137 F.3d 1081, 1082 (8th Cir. 1998) (per curiam).  Pharmacia concedes that Fisher is a member of a protected age group and that he was replaced by younger individuals, but it takes issue with respect to the other two elements.

---

[2]The ICRA is interpreted to mirror federal law, including the ADEA.  See Montgomery v. John Deere & Co., 169 F.3d 556, 558 n.3 (8th Cir. 1999).  Thus, our analysis of Fisher's ADEA claim applies equally to his ICRA claim.

Pharmacia first contends that Fisher's transfer from the corporate sales unit to the pork sales unit was a lateral transfer and thus not a "demotion" or any other cognizable adverse employment action. We disagree. A transfer constitutes an adverse employment action when the transfer results in a significant change in working conditions or a diminution in the transferred employee's title, salary, or benefits. See Spears v. Missouri Dep't of Corrections and Human Resources, 210 F.3d 850, 853-54 (8th Cir. 2000); Harlston v. McDonnell Douglas Corp., 37 F.3d 379, 382 (8th Cir. 1994). Here, Fisher was transferred from the corporate sales unit, which Pharmacia itself touts as its premier sales unit, to an admittedly less prestigious unit, thereby effectively diminishing his title. In addition, the transfer significantly altered Fisher's working conditions, as Fisher, in Pharmacia's own words, was taken "out of the lead contact position with . . . important client accounts in the corporate [sales unit]," Appellee's Brief at 31, and was placed in a position in which he sold to less lucrative clients and covered a smaller sales territory. Thus, we conclude that Fisher's transfer was an adverse employment action. See Zotos v. Lindbergh School Dist., 121 F.3d 356, 362 (8th Cir. 1997) (teacher's transfer from class for gifted students to regular classroom constituted an adverse employment action).

Pharmacia also argues that Fisher failed to demonstrate that he performed his job at a level that met Pharmacia's legitimate expectations. Pharmacia contends that following its reorganization of the animal health division it developed heightened but legitimate expectations of its employees, particularly those in the corporate sales unit, and that whatever success Fisher may have experienced in selling to corporate livestock facilities, he failed to meet those expectations. According to Pharmacia, Fisher lacked sufficient product knowledge, could not effectively communicate with customers, and acted unprofessionally during sales calls. These shortcomings, argues Pharmacia, were sufficient to justify Fisher's transfer in light of Ziegler v. Beverly Enterprises-Minnesota, Inc., 133 F.3d 671 (8th Cir. 1998).

We disagree. In Ziegler, we held that the fact that a nursing home administrator was skilled at managing finances did not establish that she had met her employer's

legitimate expectations where the record also revealed that she was deficient in other skills--leadership and communication--vital to her job as administrator. See id. at 675-76. In the context of sales, however, we have indicated that the selling of product is the primary responsibility of a salesperson and thus that sales volume is generally the principal indicator of a salesperson's performance. See Keathley, 187 F.3d at 920 & n.2. Indeed, Jerry Schwabauer, the director of Pharmacia's pork sales unit, testified that the ultimate goal of Pharmacia sales representatives is to sell animal health products. Thus, Fisher can establish that he has met his employer's legitimate employment expectations by raising an issue of material fact as to whether his sales performance was proficient prior to his transfer. See Keathley, 187 F.3d at 920 n.2; see also Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 331-32 (3d Cir. 1995). We are satisfied that Fisher has made such a showing.

Fisher presented the testimony of two individuals who are both knowledgeable about the corporate livestock industry and familiar with Fisher's ability to sell animal health products to this industry. Bruce Rastetter, the CEO of Heartland Pork, one of Pharmacia's largest corporate clients, testified that he had worked with Fisher for several years and that Fisher had always served his company well. Similarly, Dr. James Van Buren, a member of Pharmacia's management who accompanied Fisher on at least one sales call in 1996, stated that Fisher was proficient in selling to corporate livestock facilities and that he was especially adept at gaining access to the highest levels of corporate management, which is a vital aspect of corporate sales. Both of these comments relate to Fisher's ability to sell to corporate livestock operations and thus are directly probative of his performance as a member of the corporate sales unit in 1996.

Fisher also presented evidence that prior to his 1996 performance evaluation he consistently received average or above-average performance ratings. Although these past performance evaluations do not in themselves establish that Fisher was meeting Pharmacia's legitimate employment expectations at the time that he was transferred, see Miller v. Citizens Sec. Group, Inc., 116 F.3d 343, 346 (8th Cir. 1997), the most

recent of them corroborate Rastetter's and Van Buren's statements regarding Fisher's proficiency in selling to corporate livestock operations. For example, Fisher received an overall performance rating of "exceeds expectations" in 1995, a year during which he sold primarily to corporate livestock facilities. See Dr. Terry Cowan Aff. ¶ 6.[3]

Finally, even if the failure to satisfy Pharmacia's specific expectations would as a legal matter suffice to support a finding that Fisher did not meet Pharmacia's legitimate expectations, we do not believe that the facts sufficiently support such a result, at least not at this stage of the case. As will be discussed in detail below, Fisher has presented sufficient evidence to raise a fact issue regarding the veracity of Pharmacia's assertions that Fisher has failed to meet its specific expectations. See Keathley, 187 F.3d at 920 n.2. Thus, we conclude that Fisher has set forth a prima facie case of discrimination.

### B. Evidence of Pretext and Age Discrimination

Pharmacia set forth non-discriminatory reasons for Fisher's transfer, citing his lack of product knowledge, inability to communicate effectively with customers, unprofessional conduct during sales calls, and poor 1996 performance evaluation. To overcome these reasons and avoid summary judgment, Fisher must present evidence that "(1) creates a question of material fact as to whether the defendant's proffered reasons are pretextual and (2) creates a reasonable inference that age was a

---

[3]Fisher also points out that he received seven awards for his sale of animal health products. Most of these awards, in our view, are of little relevance to Fisher's 1996 performance in the corporate sales unit because they did not result from Fisher's sales to corporate clients. Fisher's 1993 award, however, may be relevant if Fisher had already begun selling to corporate facilities at that time, a fact that is unclear from the record before us. See Keathley, 187 F.3d at 920 (past sales awards relevant in determining whether plaintiff met legitimate expectations of employer).

determinative factor in the adverse employment decision." Keathley, 187 F.3d at 922 (quoting Hindman, 145 F.3d at 991).

Turning first to the issue of pretext, we conclude that Fisher has presented sufficient evidence to cast doubt upon each of Pharmacia's asserted reasons for his transfer and thus has raised a fact issue as to whether such reasons were pretextual. Fisher has presented credible evidence that he did not lack sufficient knowledge of Pharmacia's products to effectively sell to corporate livestock facilities. Rastetter, the CEO of Heartland Pork, stated that Fisher "always present[ed] his company's products in a way that demonstrated the benefit of their use to Heartland Pork." Moreover, Fisher's performance evaluations for 1994 and 1995 (years during which he sold to corporate livestock facilities) rate his product knowledge as "exceed[ing] expectations" and "fully effective," respectively. See Bevan v. Honeywell, Inc., 118 F.3d 603, 610 (8th Cir. 1997) (history of favorable performance ratings support finding that employer's proffered reason for adverse employment action was false).

Fisher has also presented evidence that his conduct during sales calls and his style of communication, although perhaps unsophisticated, were not deficient. Van Buren testified that Fisher's ability to "talk country," or relate to customers who do not have a high level of education, and his ability to build rapport with clients by talking about social matters rather than strictly business issues, actually enhanced his ability to sell Pharmacia's products. Van Buren's opinion is supported by evidence that Fisher's customers were generally very satisfied with his services.

Finally, Fisher has shown that his poor performance evaluation in 1996 may not have been the true impetus behind his transfer. The two primary shortcomings cited in this evaluation were Fisher's lack of adequate product knowledge and his informal and unstructured conduct during sales calls. We have already found that Fisher has presented sufficient evidence to raise a fact issue as to whether these asserted reasons for his transfer were pretextual. Thus, Fisher has demonstrated that his 1996

performance evaluation may have been a contrived attempt to justify his transfer. See Rose-Maston v. NME Hospitals, Inc., 133 F.3d 1104, 1109 (8th Cir. 1998) (negative performance evaluation may be pretext for discrimination where fact issue is raised regarding truth of deficiencies asserted within evaluation). This conclusion is corroborated by the fact that Fisher's overall performance ratings in the years prior to 1996, although under a different rating system, were consistently very positive. See Bevan, 118 F.3d at 610; Parrish v. Immanuel Medical Center, 92 F.3d 727, 733 (8th Cir. 1996).

Having found that Fisher has raised an issue of material fact regarding pretext, we consider whether he has presented sufficient evidence to raise a reasonable inference that age was a determinative factor in his transfer. See Keathley, 187 F.3d at 922. In Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097 (2000), the Supreme Court recently clarified what types of evidence may give rise to an inference of intentional discrimination. The Court held that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification [for an adverse employment action] is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Id. at 2109. Thus, the Court made clear that additional, independent evidence of discriminatory animus is not always required to support an inference of discrimination, and that evidence supporting the plaintiff's prima facie case and exposing as pretextual the employer's reason for an adverse employment action should be considered, along with any other evidence that may exist, in determining whether an inference of discrimination has been raised. See id.

We need not decide if Fisher's prima facie case and the potential falsity of Pharmacia's proffered explanation would alone support an inference of discrimination in this case, because Fisher has presented additional evidence supporting an inference of discrimination. This evidence consists primarily of disparaging age-related remarks made to Fisher and other Pharmacia employees by members of Pharmacia's management. Most notably, there is evidence that John Reimer, vice-president of

Pharmacia's animal health division, stated that "[w]e need to get rid of the old guys," and that Jerry Schwabauer similarly stated that Pharmacia "wanted to bring some of the younger people along faster."[4]  In addition, Fisher testified that Jim Brewer, Fisher's supervisor in 1995, occasionally referred to Fisher as "the old guy."

Pharmacia argues that these statements cannot give rise to an inference of discrimination because they are merely "stray remarks," or statements that were made by non-decisionmakers and that are not causally related to Fisher's transfer to the pork sales unit.  Although we agree that stray remarks, standing alone, may not give rise to an inference of discrimination, such remarks are not irrelevant.  See Ryther v. KARE 11, 108 F.3d 832, 844 (8th Cir. 1997) (en banc).  Rather, such comments are "surely the kind of fact which could cause a reasonable trier of fact to raise an eyebrow, thus providing additional threads of evidence that are relevant to the jury."  Bevan, 118 F.3d at 610 (citations and quotations omitted)[5]; see Ryther, 108 F.3d at 844.  Stray remarks therefore constitute circumstantial evidence that, when considered together with other evidence, may give rise to a reasonable inference of age discrimination.  See Fast v. Southern Union Co., Inc., 149 F.3d 885, 891-92 (8th Cir. 1998); Madel v. FCI Marketing, Inc., 116 F.3d 1247, 1253 (8th Cir. 1997); Bevan, 118 F.3d at 610-11.

---

[4]The district court indicated that Reimer's statement would not be admissible at trial, but it did not explain the basis for such inadmissibility.  We simply note that neither Reimer's remark, nor other remarks made by members of Pharmacia's management regarding activities within the scope of their employment, constitute inadmissible hearsay.  See Equal Employment Opportunity Comm'n v. HBE Corp., 135 F.3d 543, 552 (8th Cir. 1998), Bevan, 118 F.3d at 611.

[5]Although Bevan was before us following a jury verdict in favor of the plaintiff and the district court's denial of the defendant's motion for judgment as a matter of law, the Supreme Court in Reeves stated that the standard applied in reviewing a judgment as a matter of law is identical to that applied in reviewing a grant of summary judgment.  See Reeves, 120 S. Ct. at 2110.

Thus, even assuming that the comments made by Reimer, Schwabauer, and Brewer were nothing more than stray remarks, we conclude that these statements, when considered in conjunction with Fisher's prima facie case and showing of pretext, give rise to an inference of intentional discrimination. Fisher has established that, despite his history of strong sales performance, at least some of which involved sales to corporate livestock facilities, Pharmacia transferred Fisher from the corporate sales unit and gave his accounts to younger employees. Further, Fisher has shown that Pharmacia's purported reasons for such a move may have been disingenuous and that, based on comments by members of Pharmacia's management, Fisher's age may have been the real impetus behind his transfer. Thus, we conclude that a reasonable trier of fact could conclude that Fisher's age was a determinative factor in Pharmacia's decision to transfer Fisher to the pork sales unit.

The judgment is reversed, and the case is remanded to the district court for further proceedings.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-