# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3811

_____

| | | |
|---|---|---|
| Betty Mathes, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Furniture Brands International, Inc. | * | |
| | * | |
| Appellee. | * | |

_____

Submitted:  June 14, 2001

Filed:  September 21, 2001

_____

Before MORRIS SHEPPARD ARNOLD and RICHARD S. ARNOLD, Circuit Judges, and BATAILLON, District Judge.[1]

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Betty Mathes appeals the order of the district court[2] granting summary judgment to her former employer, Furniture Brands International, Inc. (FB), in this age discrimination action.  We affirm.

_____

[1]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska, sitting by designation.

[2]The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

Ms. Mathes brought her discriminatory discharge action under the Age Discrimination in Employment Act (ADEA), *see* 29 U.S.C. §§ 621-634, which prohibits employers from discriminating against persons who are at least forty years old based on their age, *see* 29 U.S.C. §§ 631(a), 623(a)(1). She also alleged that FB violated the Missouri Human Rights Act (MHRA), *see* Mo. Rev. Stat. §§ 213.010-213.137, under which age-discrimination claims are analyzed in the same manner as they are under the ADEA, *see Denesha v. Farmers Ins. Exch.*, 161 F.3d 491, 497 (8th Cir.1998), *cert. denied*, 526 U.S. 1115 (1999); *West v. Conopco Corp.*, 974 S.W.2d 554, 556 (Mo. Ct. App. 1998).

We review *de novo* the district court's grant of summary judgment. *See Hindman v. Transkrit Corp.*, 145 F.3d 986, 990 (8th Cir. 1998). In so doing, we view the evidence in the light most favorable to the non-moving party, *see id.*; *see also* Fed. R. Civ. P. 56(c), and give the non-moving party the benefit of all reasonable inferences, that is, those inferences that may be drawn without resorting to speculation, *see Sprenger v. Fed. Home Loan Bank*, 253 F.3d 1106, 1110 (8th Cir. 2001).

I.

Ms. Mathes worked for FB for many years and advanced to the position of administrative secretary to Duane Patterson, the corporate secretary. When Mr. Patterson retired, Lynn Chipperfield became corporate secretary and also retained his position as FB's general counsel. At about the same time, one of the secretaries in the law department left the company, and the president of the board of directors indicated to Ms. Mathes that he wanted her to remain an employee. Mr. Chipperfield told Ms. Mathes that she would come to work for him after Mr. Patterson's retirement.

After Mr. Chipperfield was named corporate secretary, he called a meeting and announced that Ms. Mathes would be moving to the law department (over which he maintained control as general counsel) and that thirty-year-old Becky Lindblom, who had been Mr. Chipperfield's secretary for five years, would continue in that capacity.

When Ms. Mathes complained that Mr. Chipperfield had promised her that she would be his secretary, he asked her to wait until later to discuss the matter with him. She refused and stated that although she might be fired she must know immediately whether she would continue to be "administrative." Mr. Chipperfield adjourned the meeting and met privately with Ms. Mathes. She explained to him that being classified as "administrative" indicated that she was one of the few secretaries who worked for a top FB executive, and she told him that she would not move into the law department unless Ms. Lindblom moved out of the desk next to Mr. Chipperfield's office.

After speaking to Ms. Lindblom, Mr. Chipperfield gave Ms. Mathes the desk by his office and divided his work between her and Ms. Lindblom. Mr. Chipperfield did not find this situation workable, however, and despite Ms. Lindblom's desire to work for him, he eventually assigned all of his work to Ms. Mathes. He also assigned to Ms. Mathes some of the work of attorney Bob Kaintz. Although Ms. Lindblom worked for other attorneys in the legal department, Mr. Chipperfield continued to talk and joke with her, to forward his calls to her when he was gone, and to keep her rather than Ms. Mathes informed of his whereabouts.

Mr. Chipperfield testified that during the first two or three months after Ms. Mathes started working for him he began noticing that she made quite a few clerical mistakes. As part of her job, Ms. Mathes entered stock-option information into a computer program. About a year and a half after Ms. Mathes began working for Mr. Chipperfield, one of the managers told Mr. Chipperfield that employees in the computer department did not want her to enter the stock-option information into the computer once a new stock-option program was installed. The manager attested that he passed on to Mr. Chipperfield what the employees told him: that Ms. Mathes made frequent errors when entering information into the current stock-options program and that erroneous entries into the new system could be more harmful because under that system changes could be made in the historical data without being detected.

After Mr. Chipperfield received this report, he began keeping notes about problems with Ms. Mathes's performance. Five months later, Mr. Chipperfield met with Ms. Mathes and confronted her with the complaints that he had noted. Ms. Mathes admitted that she had made some of the clerical mistakes and denied others. She also told him that the old stock-option program, which was still in use, did not permit her to make erroneous entries because it required that the numbers balance; she asked him to explain to her the errors she had made, but he did not do so. At the close of the meeting Mr. Chipperfield inquired whether something was bothering her, and she said "no" but that she had dreamt about him the night before and he was wearing a wig and looked just like "Becky [Lindblom]." At her deposition, Ms. Mathes explained that she thought that Mr. Chipperfield would understand from her dream that she was "under a lot of stress."

According to Mr. Chipperfield, Ms. Mathes's performance did not improve after the meeting. Mr. Chipperfield stated that several months later he was determining salary increases and realized that Ms. Mathes would either have to be given a raise or terminated. He decided to discharge her for poor performance. After terminating Ms. Mathes, Mr. Chipperfield asked Ms. Lindblom to work for him. Before giving Ms. Lindblom the position Mr. Chipperfield asked her to assure him that she would return from maternity leave, stop talking to a co-worker at her desk, "reign in" her sense of humor, and take the initiative to learn some of the things that he was doing.

## II.

Because Ms. Mathes did not offer direct evidence of intentional discrimination, we review this case using the "*McDonnell Douglas* three-stage order of proof and presumptions," *see Hindman*, 145 F.3d at 990 (8th Cir.1998) (relying on *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). First, Ms. Mathes must establish a prima facie case of age discrimination. *See Hindman*, 145 F.3d at 990. For the purpose of what follows, we assume without deciding that Ms. Mathes met this requirement.

Once the plaintiff offers evidence supporting a prima facie case of discrimination, the employer must come forward with a legitimate nondiscriminatory reason for its conduct. *See Sprenger*, 253 F.3d at 1111. FB did so by offering evidence that Mr. Chipperfield decided to discharge Ms. Mathes because of difficulties that he had with her performance and conduct. Ms. Mathes argues, however, that the reasons offered by FB for her discharge were a pretext for discrimination. *See id.* She relies on the Supreme Court's holding in *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148-49 (2000), that under some, but not all, circumstances a prima facie case combined with "sufficient evidence to reject the employer's explanation" will be sufficient to create a jury question.

Here, however, we believe that Ms. Mathes's proof created only a very weak inference that FB's reason for terminating her was untrue. As the district court found, Ms. Mathes did offer evidence that she was not responsible for some of the mistakes and clerical errors that Mr. Chipperfield attributed to her and that she had not misused overtime (although she admitted that when Mr. Chipperfield asked her not to claim overtime for a business trip she told him that he was "cheap"). It is also true that Mr. Kaintz contradicted Mr. Chipperfield by testifying by deposition that he had not asked Mr. Chipperfield to assign him a different secretary and had not said that Ms. Mathes did not understand how the law department operated.

On the other hand, Mr. Kaintz testified that he did tell Mr. Chipperfield that Ms. Mathes's work was "slipping," explaining that he thought that Ms. Mathes, who "always made mistakes" but worked quickly, "was making an increasing number of mistakes as time went along." Also, Ms. Mathes acknowledged that she was responsible for some of the typographical and other clerical errors noted by Mr. Chipperfield. Although Ms. Mathes questioned the contention that she could have made erroneous entries into the stock-option computer program, FB offered undisputed evidence that Mr. Chipperfield, the sole decision-maker, was told that she had done so and that the computer department employees had expressed concerns about her

working on the new system.  *Cf. Gill v. Reorganized School District*, 32 F.3d 376, 378 (8th Cir. 1994) (relevant question is whether decision-maker honestly believed reason he gave for decision).

Ms. Mathes also acknowledged that her conduct at the law department meeting apparently had embarrassed Mr. Chipperfield and that she essentially had given him an ultimatum: that either she work for him or she would quit.  Furthermore, she did not dispute that when Mr. Chipperfield, after discussing her performance problems, asked her if something was wrong, she responded by describing a dream she had about him. With regard to Ms. Mathes's replacement, although Ms. Lindblom was asked to change some of her conduct at work, there was no evidence that others were complaining to Mr. Chipperfield about Ms. Lindblom's performance and a computer department employee suggested that Ms. Lindblom might be trained on the new stock-option computer program.

In *Reeves*, 530 U.S. at 148-49, the Supreme Court stated that in assessing whether the evidence supports a case of discrimination, the court should examine, *inter alia*, "the probative value of the proof that the employer's explanation is false."  Here we believe that insofar as Ms. Mathes's evidence of pretext supports a finding that Mr. Chipperfield discharged her for a reason other than poor performance, the supported reason is Mr. Chipperfield's personal preference for his previous secretary, Ms. Lindblom.

Ms. Lindblom worked for Mr. Chipperfield for five years, and he indicated to the law department that he wanted her to continue to do so.  Ms. Mathes offered evidence that Mr. Chipperfield and Ms. Lindblom were personally close and contended that Mr. Chipperfield wanted "his Becky" to work for him.  In her brief, Ms. Mathes states that Mr. Chipperfield "demonstrated a preference for Lindblom on a more personal level. .... [They] laughed and talked together, maintaining a sarcastic banter in the office."  When Mr. Chipperfield replaced Ms. Lindblom with Ms. Mathes as his

secretary, Ms. Lindblom was upset and later indicated that she hoped that Ms. Mathes would retire. At the time he discharged Ms. Mathes, Mr. Chipperfield may have feared that Ms. Lindblom would leave the company: According to Ms. Mathes, she was discharged at a time when Ms. Lindblom was threatening not to return from maternity leave.

Although Ms. Lindblom was certainly younger than Ms. Mathes, we believe in the end that a reasonable mind would have to resort to speculation to find that it was Ms. Lindblom's age, rather than some other quality, such as familiarity or compatibility, that motivated Mr. Chipperfield to want her to work with him. Nor do we believe that other conduct or remarks that Ms. Mathes points to, such as Mr. Chipperfield and Ms. Lindblom laughing together about Ms. Mathes keeping a copy of her will at the office, are sufficient to support a finding of age discrimination.

Having carefully reviewed the record, as we believe *Reeves* requires, we conclude that summary judgment was proper because Ms. Mathes failed to "provide sufficient, probative evidence which would permit a fact finder to rule in [her] favor as opposed to engaging in 'mere speculation.' " *Kneibert v. Thomson Newspapers, Mich. Inc.*, 129 F.3d 444, 455 (8th Cir. 1997) (quoting *Wilson v. Int'l Bus. Machines Corp.*, 62 F.3d 237, 241 (8th Cir.1995)). Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-7-