# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2199

_____

Danny Fitzgerald,                        *
                                         *
      Plaintiff - Appellant,        *
                                         *    Appeal from the United States
    v.                              *    District Court for the Western
                                         *    District of Arkansas.
Action, Inc.,                            *
                                         *
      Defendant - Appellee.         *

_____

Submitted: February 15, 2008
Filed: April 4, 2008

_____

Before BYE, RILEY, and BENTON, Circuit Judges.

_____

BYE, Circuit Judge.

Danny Fitzgerald appeals the district court's grant of summary judgment in favor of his former employer, Action, Inc., on his claims of age discrimination and interference with employment benefits. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

# I

The facts, viewed in the light most favorable to Fitzgerald, <u>Dush v. Appleton Elec. Co.</u>, 124 F.3d 957, 962-63 (8th Cir. 1997) (summary judgment standard), show the following. He began working for Action as a shop hand on November 12, 2003. At the time, he was fifty years old, and worked for Action until he was terminated on May 19, 2005. Throughout this period, Raymond Easley was Fitzgerald's supervisor and shop foreman.

On February 20, 2005, while Fitzgerald was working, Harold Yandell caused Fitzgerald to fall, re-aggravating a back and shoulder injury, causing him to miss about a week of work. He attempted to file an accident report but Action informed him the incident would be taken care of informally. In late February and early March 2005, he received treatment for his back. On May 11, 2005, he saw Dr. Greg Jones regarding his shoulder. Following the consultation with the doctor, it became apparent Fitzgerald would need surgery. The record reveals Dr. Jones told Fitzgerald he would likely need rotator cuff surgery, and, prior to his termination, Fitzgerald informed Action he intended to have surgery.

Action asserts "no shoulder surgery had been recommended or scheduled prior to [Fitzgerald's] termination" and, therefore, it was unaware he was planning on having shoulder surgery. The record, however, shows Dr. Jones spoke with Fitzgerald about "treatment options" and informed him "at least an acromioplasty [shoulder surgery] for the hooked acromion and AC decompression would be appropriate." App. at 53. According to Fitzgerald, he immediately notified Easley and others at Action he was going to be having shoulder surgery and needed time off. Easley and Pete Garner, Action's shop manager, approved his request for time off. <u>Id.</u>

Additionally, Dr. Jones's notes from a followup appointment on May 20, 2005, support Fitzgerald's testimony.

[Fitzgerald] gives me an interesting story regarding recent dismissal from work. I am not sure what to make of that. He is concerned that it has something to do with his upcoming right shoulder surgery or perhaps an injury that he sustained in an incident at work for which he had been seen shortly after by Dr. Cole regarding the work related nature. The bottom line is that I do not know how to advise him except to make sure his insurance issues are under control at least until the time that he gets the shoulder taken care of, so as to protect himself on that respect.

App. at 56.

On May 19, 2005, Easley informed Fitzgerald he was being "laid off." Easley told him "the decision had come from upstairs [management] and that they did not need a reason." Appellant's Br. at 3. Upon Fitzgerald pressing Easley, Easley stated Fitzgerald was being terminated due to "lack of work." Id.

Later, in an affidavit, Easley indicated he terminated Fitzgerald's employment "because of the accumulation of his employee misconduct and specifically over his abuse of restroom privileges and break time." App. at 86. Easley stated Fitzgerald's use of "the restroom for long periods of time, usually . . . before break time or time to go home" was an abuse of restroom privileges and break time and a "violation of Action Employee Conduct." Id. According to Easley, he spoke with Garner regarding Fitzgerald's abuse of bathroom privileges on May 17, 2005, and Garner made the decision to terminate Fitzgerald.

In response to an Equal Employment Opportunity Commission (EEOC) Request for Information, Action submitted a written position statement stating:

[Fitzgerald] was not laid off because of lack of work. He was terminated for cause as a result of accumulated misconduct. Multiple written statements issued to the Charging Party [referring to the Employee

-3-

Action Forms] are attached hereto as Exhibit 5. His attendance record is reflected in additional Exhibit 7.

App. at 155.

The record reveals from February 4, 2005, to May 17, 2005, Fitzgerald was "written up" for employee misconduct on seven occasions (five of which are relevant on appeal). He states he was aware written warnings were part of Action's disciplinary process and Easley required employees to sign the written warnings. However, while he had received verbal warnings about wearing a seatbelt on the forklift and smoking in the doorway to the shop, he had not been the subject of any written disciplinary action and Easley never required him to sign a written warning.

## II

### A

Fitzgerald contends he was terminated because of his age, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623, and because of his need for employee benefits coverage for his shoulder surgery, in violation of § 510 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1140. He argues the district court erred in granting Action's motion for summary judgment on both claims because material issues of fact existed.

We review a district court's grant of summary judgment de novo. Fischer v. Andersen Corp., 483 F.3d 553, 556 (8th Cir. 2007) (citing Woodland v. Joseph T. Ryerson & Son, Inc., 302 F.3d 839, 841 (8th Cir. 2002)). When the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, summary

judgment is appropriate. Id. (citing Fed. R. Civ. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

B

Fitzgerald first argues Action terminated him "to prevent him from receiving his healthcare insurance benefits" in violation of § 510 of ERISA. Appellant's Br. at 6. Specifically, he contends he notified Easley and others "he was preparing to have surgery on his shoulder to repair damage from an old industrial accident" and Action terminated him to avoid paying "the substantial costs and potential future costs of this claim." Id.

Section 510 of ERISA makes it unlawful for an employer to discharge a participant in an employee benefit plan "for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. To establish a claim for a violation of § 510, Fitzgerald must show Action "had a specific intent to interfere with [his insurance] benefits, but that may be shown by circumstantial evidence." Register v. Honeywell Fed. Mfg. & Techs., LLC, 397 F.3d 1130, 1136-37 (8th Cir. 2005) (citing Regel v. K-Mart Corp., 190 F.3d 876, 881 (8th Cir. 1999)). In the absence of direct evidence of an employer's deliberate interference with future benefits, we analyze § 510 interference claims using the McDonnell Douglas[1] three-part burden-shifting analysis common to Title VII and ADEA cases. See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981); Libel v. Adventure Lands of America, Inc., 482 F.3d 1028, 1035 n.7 (8th Cir. 2007) (holding because "Libel's ERISA claim is based on alleged circumstantial evidence . . . we analyze [it] under the McDonnell Douglas framework.").

---

[1]McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-04 (1973).

Initially, Fitzgerald must make a prima facie showing Action terminated him with the specific intent of interfering with his insurance benefits. Then the burden shifts to Action to articulate a legitimate, nondiscriminatory reason for the termination. If the employer does so, the burden shifts back to the employee to prove the proffered reason was pretextual. Register, 397 F.3d at 1137.

The district court assumed Fitzgerald established a prima facie case but granted summary judgment, concluding Action had "provided legitimate, nondiscriminatory reasons for [Fitzgerald's] termination" and "these nondiscriminatory reasons for terminating [Fitzgerald] prevent a fact finder from concluding that the reasons for terminating him were pretextual." Id. On appeal, neither party challenges the district court's assumption or its conclusion Action articulated a legitimate, nondiscriminatory reason for the termination decision, i.e., Fitzgerald's accumulated misconduct. Instead, the parties dispute whether Fitzgerald has produced sufficient evidence to show the employer's reason was pretextual and whether it acted with a specific intent to interfere with the employee's rights.

If the employer rebuts the inference of discrimination arising from the employee's prima facie case, the employee can prove the employer's articulated justification is merely pretextual "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Gavalik v. Continental Can Co., 812 F.2d 834, 853 (3d Cir. 1987) (quoting Burdine, 450 U.S. at 256). In determining whether summary judgment is appropriate we consider "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Girten v. McRentals, Inc., 337 F.3d 979, 982 (8th Cir. 2003) (quoting Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 148-49 (2000)).

An employee may prove pretext by demonstrating that the employer's proffered reason has no basis in fact, that the employee received a favorable review shortly before he was terminated, that similarly situated employees who did not engage in the protected activity were more leniently treated, that the employer changed its explanation for why it fired the employee, or that the employer deviated from its policies.

Stallings v. Hussmann Corp., 447 F.3d 1041, 1052 (8th Cir. 2006) (citing Smith v. Allen Health Sys., 302 F.3d 827, 834-35 (8th Cir. 2002)).

Fitzgerald contends the evidence in the record was sufficient to raise genuine issues of material fact regarding Action's explanation for the termination. Specifically, he points to: (1) Action's inconsistent explanations for the termination; (2) Action's failure to follow company policy; (3) Action's more lenient treatment of another employee; and (4) the temporal proximity between notifying Action of his surgery and his termination. We conclude Fitzgerald has put forth sufficient evidence to show accumulated misconduct may not have been the true impetus behind his termination, but rather a pretext for interfering with his insurance benefits.

1

Action maintains it terminated Fitzgerald for accumulated misconduct. At the time of his discharge, however, Action gave a different reason. Easley informed Fitzgerald he was being "laid off" due to a "lack of work." Appellant's Br. at 10. Based on Easley's explanation, Fitzgerald filed a claim for unemployment insurance benefits with the Arkansas Employment Security Division (AESD), representing he had been "laid off" due to a "lack of work." App. at 148. The AESD notified Action and gave it the opportunity to dispute his claim. Action was aware if it failed to timely dispute his claim it would waive its right to protest the AESD's final determination. Action did not respond and the AESD found Fitzgerald eligible for unemployment benefits after being "laid off."

Conversely, Easley stated he terminated Fitzgerald's employment "because of the accumulation of his employee misconduct and specifically over his abuse of restroom privileges and break time." Id. at 86. Easley claimed Fitzgerald's use of "the restroom for long periods of time, usually . . . before break time or time to go home" was an abuse of restroom privileges and break time and a "violation of Action Employee Conduct." Id. In particular, Easley stated Fitzgerald was terminated because of the May 17, 2005, "bathroom incident." Id. at 167, 168-69, 171.

Action's different justifications "give rise to a genuine issue of fact with respect to pretext since they suggest the possibility that [none] of the official reasons was the true reason." Washington v. Garrett, 10 F.3d 1421, 1434 (9th Cir. 1994) (reversing partial summary judgment for defendant on grounds the fact finder could infer discrimination from inconsistency in defendant's articulated reasons for plaintiff's termination). "A rational trier of fact could find these varying reasons show that the stated reason was pretextual, for one who tells the truth need not recite different versions of the supposedly same event." Payne v. Norwest Corp., 113 F.3d 1079, 1080 (9th Cir. 1997). See also Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 432 (1st Cir. 2000) ("[W]hen a company, at different times, gives different and arguably inconsistent explanations, a jury may infer that the articulated reasons are pretextual.").

Action argues the fact it has given inconsistent reasons for Fitzgerald's termination is irrelevant because each reason was a "legitimate reason[ ] for terminating Fitzgerald's at-will employment."[2]  Appellee's Br. at 17.  Action misunderstands the probative value of this evidence. As we explained in Wallace v. DTG Operations, Inc.:

---

[2]Action suggests it was justified in changing its stated reason for Fitzgerald's termination because, when told his services were no longer needed, it was Fitzgerald "who pressed the issue for the reason why." App. at 97. We fail to see how this is relevant to the issue of pretext.

There are at least two routes by which a plaintiff may demonstrate a material question of fact at this final stage of the analysis. First, a plaintiff may succeed "indirectly by showing that the employer's proffered explanation is unworthy of credence," Burdine, 450 U.S. at 256, because it has "no basis in fact." Smith v. Allen Health Sys., Inc., 302 F.3d 827, 834 (8th Cir. 2002). Second, a plaintiff may succeed "directly by persuading the court that a [prohibited] reason more likely motivated the employer." Burdine, 450 U.S. at 256. Both of these routes, in effect, amount to a showing that the prohibited reason, rather than the proffered reason, actually motivated the employer's action.

442 F.3d 1112, 1120 (8th Cir. 2006). The first route typically requires the plaintiff rebut the facts underlying the employer's stated reason. Id. "The second route, in contrast, . . . focuses instead on rebuttal of the employer's ultimate factual claim regarding the absence of [discriminatory] intent." Id. at 1121. Under this route, "a plaintiff may concede that the proffered reason . . . *would have been* a sufficient basis for the adverse action while arguing that the employer's proffered reason was not the true reason for the action." Id. (citing Hitt v. Harsco Corp., 356 F.3d 920, 924 (8th Cir. 2004) (stating whether an age discrimination plaintiff could show pretext turned "on whether age was . . . the true reason for, the decision to terminate")) (emphasis in original).

Utilizing this second route, Fitzgerald has demonstrated Action's varying explanations raise a question whether any of the stated reasons are the true reason for its decision. See Tatum v. City of Berkeley, 408 F.3d 543, 554 (8th Cir. 2005) (indicating, in the absence of evidence to dispel the inference that defendant's stated reason for plaintiff's termination was not the true reason, judgment as a matter of law was improper). Moreover, the fact that each of Action's stated explanations would have been a legitimate basis for terminating Fitzgerald does not neutralize the probative value of this evidence. See Kobrin v. Univ. of Minn., 34 F.3d 698, 703 (8th Cir. 1994) ("Substantial changes over time in the employer's proffered reason for its employment decision support a finding of pretext."). Accordingly, a rational trier of

fact could find the employer's varying reasons for the employee's termination are evidence of pretext.

2

Next Fitzgerald contends Action's failure to discipline him according to company policy is evidence of pretext. Cf. Erickson v. Farmland Indus., Inc., 271 F.3d 718, 727 (8th Cir. 2001) (noting employee can prove pretext through evidence the employer varied from its normal policy or practice to address the employee's situation). Easley testified it was protocol to verbally warn an employee who violated a rule and, if it happened again, to "write the employee up" or fill out an Employee Action Form. Easley, however, did not give Fitzgerald a verbal warning before writing him up for the "bathroom incident." Id. When asked why, Easley responded: "I kept watching him and I kept watching him and watching him. He kept horsing around and monkeying,[3] and that's the reason I did it." Id.

Additionally, under Action's termination policy, an employee would only be terminated after being written up three times for the same violation. App. at 171-172. Easley admitted Fitzgerald had not been written up three times for abusing restroom privileges and was "terminated in violation of Action's policy." Id. at 172. Easley also admitted he had not fired anyone other than Fitzgerald for abuse of restroom privileges. Id.

We conclude Fitzgerald has shown that the circumstances surrounding his termination contravened Action's normal policies and are evidence Action's proffered explanation was pretextual.

---

[3] Easley explained "monkeying around" to mean spending excessive time in the restroom. Easley's Dep. at 20.

Fitzgerald next asserts Action's more lenient treatment of another employee supports the conclusion his accumulated misconduct was a pretext for discrimination. "An employee can prove pretext by showing the employer meted out more lenient treatment to similarly situated employees who were not in the protected class, or as here, who did not engage in protected activity." Smith v. Allen Health Sys., Inc., 302 F.3d at 835 (citing Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 (8th Cir. 1994)). Fitzgerald argues David Gipson was similarly situated and "a far less satisfactory employee," yet Action did not terminate his employment. Appellant's Br. at 24.

The record shows Action hired Gipson in August 2004 and Fitzgerald in November 2003. Both men were employed as shop hands. At the time Fitzgerald was terminated, Gipson was forty-eight years old and Fitzgerald was fifty-one. From January to April 2005, Gipson missed more days of work and arrived late to work more times than Fitzgerald. Both men were involved in the smoking incident, which led to Fitzgerald's March 2, 2005, employee action form. Finally, following Fitzgerald's termination, Gipson was written-up for insubordination after Easley witnessed Gipson standing "by the water cooler for 5 to 10 min. doing nothing." App. at 187. When Easley told Gipson to help load the truck, Gipson replied: "Don't tell me what to do. . . . FUCK YOU, get my check." Id. Easley sent Gipson home, but the next day, after he and Gipson spoke, Easley let Gipson come back to work and no disciplinary action was taken. Id. at 188. According to Fitzgerald, the controlling distinction between his conduct and Gipson's was, unlike Fitzgerald, Gipson made no claim for employee medical benefits.

We conclude a reasonable jury could find Action treated Fitzgerald more harshly than Gipson because of his anticipated insurance claim.

Fitzgerald next contends the temporal connection between the protected activity and his termination is further evidence of pretext. Action argues temporal proximity, standing alone, is insufficient to prove retaliatory intent.

We have held "timing alone is insufficient to show a pretextual motive rebutting a legitimate, non-discriminatory reason for an adverse employment action." Green v. Franklin Nat'l Bank of Minneapolis, 459 F.3d 903, 916 (8th Cir. 2006) (citing EEOC v. Kohler Co., 335 F.3d 766, 774 n.7 (8th Cir. 2003)).

> We cannot [however] presume that fact finders view each piece of evidence in isolation, and most cases that involve claims of retaliation stem from rich factual backgrounds that provide ample evidence to support and/or disprove allegations of retaliation. In all such cases, the evidence of pretext and retaliatory intent must be viewed in its totality. Viewed within the context of the overall record, temporal proximity may directly support an inference of retaliation, and it may also affect the reasonableness of inferences drawn from other evidence.

Wallace, 442 F.3d at 1122.

Here only a few days elapsed between Fitzgerald's notification of his intent to have surgery and Action's decision to terminate him, and temporal proximity provides support for an inference of retaliatory intent. Moreover, the reason Action gave for terminating Fitzgerald – accumulated misconduct – had existed for months before Fitzgerald notified Action of his surgery. With the exception of the "bathroom incident," which occurred on May 17, 2005, the alleged misconduct involved four incidents between February 4, 2005, and March 2, 2005: on February 4 and February 11, Fitzgerald was not wearing a seatbelt while driving the forklift; on February 11, Fitzgerald was thirty minutes late for work; and on March 2, Fitzgerald was smoking on the dock during working hours. Yet, Action made the decision to terminate

Fitzgerald on May 17, 2005; days after finding out about his upcoming surgery, but some two and a half months after the bulk of the accumulated misconduct occurred.

Where an employer tolerates an undesirable condition for an extended period of time, and then, shortly after the employee takes part in protected conduct, takes an adverse action in purported reliance on the long-standing undesirable condition, a reasonable jury can infer the adverse action is based on the protected conduct. See Eliserio v. United Steelworkers of America Local 310, 398 F.3d 1071, 1079-80 (8th Cir. 2005) (stating when an employer ignored or treated as de minimis five complaints about an employee but took drastic action following a sixth, identical complaint, a reasonable jury could infer the employer's claim of reliance on the sixth complaint was pretextual). In this case, a fact finder could reasonably infer Action would have terminated Fitzgerald sooner if accumulated misconduct had been the true motivation for his discharge.

Viewed in concert with other evidence of pretext, the close temporal proximity between Fitzgerald's notification and Action's termination decision provides support for an inference of retaliatory intent. Because material questions of fact exist on the issue of pretext, we conclude it was error for the district court to grant Action summary judgment on Fitzgerald's ERISA claim.

C

Fitzgerald next appeals the district court's grant of summary judgment on his claim of age discrimination. The ADEA forbids an employer from taking adverse employment actions against an employee because of his age. 29 U.S.C. § 623(a)(1). A plaintiff may establish a claim of intentional age discrimination either through direct evidence of discrimination or through circumstantial evidence. Carraher v. Target Corp., 503 F.3d 714, 716 (8th Cir. 2007) (citing Mayer v. Nextel W. Corp., 318 F.3d 803, 806 (8th Cir. 2003)). Where the plaintiff does not show a specific link

between the alleged discrimination and the adverse action, we apply the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-04 (1973).  See Regal, 190 F.3d at 879 (citing Hindman v. Transkrit Corp., 145 F.3d 986, 990-91 (8th Cir. 1998)).

The district court assumed, and Action does not dispute, that Fitzgerald established a prima facie case of age discrimination.  The district court further found Action had articulated a legitimate, non-discriminatory reason for the termination, i.e., accumulated misconduct.  Fitzgerald, therefore, can only avoid summary judgment if he presents evidence showing: (1) Action's proffered reason was pretextual; and (2) age was a determinative factor in Action's decision.[4]  See Regal, 190 F.3d at 879 (citing Hindman, 145 F.3d at 991).

In addition to Action's inconsistent explanations for the termination and its failure to follow company policy, Fitzgerald relies on the following as evidence age was a determinative factor in Action's decision: (1) comments made by Easley reflecting age-based animus; and (2) Easley's testimony stating Fitzgerald was replaced with "younger kids."  Appellant's Br. at 18.  According to Fitzgerald, during the course of his employment, Easley told him they were getting "too old for that type of work" and "needed to retire."  Appellant's Br. at 18.  Fitzgerald claims after the incident with Yandell, Easley's "mood changed."  Id.  Instead of referring to both of them, Easley began to comment Fitzgerald was getting "too old for the job" and "needed to retire."  Id.  In addition, when asked who Action hired to replace Fitzgerald, Easley stated he could not remember exactly who, but he "usually [didn't] hire older guys . . . because [younger guys] are cheaper to work, cheaper labor."  App. at 177.

---

[4]Having determined Fitzgerald presented sufficient evidence of pretext, we focus on whether age was a determinative factor in Action's decision.

-14-

"Stray remarks" standing alone do not give rise to an inference of discrimination. Fisher v. Pharmacia & Upjohn, 225 F.3d 915, 922 (8th Cir. 2000). But, neither are they irrelevant. Id. "[S]uch comments are 'surely the kind of fact which could cause a reasonable trier of fact to raise an eyebrow, thus providing additional threads of evidence that are relevant to the jury.'" Id. at 922-23 (quoting Bevan v. Honeywell, Inc., 118 F.3d 603, 610 (8th Cir. 1997)). When combined with other evidence, stray remarks "constitute circumstantial evidence that . . . may give rise to a reasonable inference of age discrimination." Id. at 923.

Fitzgerald argues the remarks attributed to Easley, combined with other evidence recounted herein, gives rise to an inference of discrimination. Action, however, argues other evidence counters against the inference. For example, Action notes Fitzgerald admitted that a "far less satisfactory employee," who was also a member of the protected class, was not terminated for alleged misconduct. Further, Action hired Fitzgerald when he was fifty and terminated him when he was fifty-two. We have noted it is unlikely a supervisor would hire an older employee and then discriminate on the basis of age, and such evidence creates a presumption against discrimination. Peterson v. Scott County, 406 F.3d 515, 522 (8th Cir. 2005). Under different circumstances, the remarks attributed to Easley might create an inference of discrimination. In this instance, however, they are insufficient to overcome the presumption created by the fact Action hired Fitzgerald at age fifty. Therefore, we conclude the evidence is insufficient to create a reasonable inference age was a determinative factor in Fitzgerald's termination.

## III

Accordingly, we reverse the district court's grant of summary judgment on Fitzgerald's interference claim, affirm the district court's grant of summary judgment on his age discrimination claim, and remand for further proceedings consistent with this opinion.

_____