Kim Iann **MANNING,** Plaintiff,

v.

**AMERICAN REPUBLIC INSURANCE COMPANY,** Defendant.

No. 4:07–cv–00217–JEG.

United States District Court,
S.D. Iowa,
Central Division.

June 19, 2009.

---

Bruce H. Stoltze, Eric M. Updegraff, Stoltze & Updegraff PC, Des Moines, IA, for Plaintiff.

Debra Lynne Hulett, Thomas W. Foley, Nyemaster Goode West Hansell & O'Brien PC, Des Moines, IA, Sarah J. Gayer, Nyemaster Goode West Hansell & O'Brien PC, Cedar Rapids, IA, for Defendant.

## ORDER

JAMES E. GRITZNER, District Judge.

This matter comes before the Court on a Motion for Partial Summary Judgment by Defendant American Republic Insurance Company (ARIC), which Plaintiff Kim

Iann Manning (Manning) resists. The Court held a hearing on the matter on May 20, 2009. Manning was represented by Bruce and Andrew Stoltze. ARIC was represented by Thomas Foley. The matter is fully submitted and ready for disposition.

## I. BACKGROUND

The Court's February 24, 2009, order affirming the ARIC plan administrator's decision denying Manning's application for short-term disability (STD) benefits contained a thorough recitation of the facts of this case (Clerk's No. 47 at 1–9). However, the Court will briefly summarize the specific material facts for Defendant's motion either as undisputed or "in the light most favorable to [Manning], as the non-moving part[y]." *O'Brien v. Dep't of Agric.*, 532 F.3d 805, 808 (8th Cir.2008).

Manning began working at ARIC on January 31, 2005, and was covered under ARIC's medical and disability plan (the Plan), including STD benefits. Manning took a medical leave of absence on April 26, 2005, and applied for STD benefits on May 5, 2005. Manning corresponded with ARIC representatives between May and August 2005 about Manning's STD claim, addressing whether Manning had consulted an "Approved Health Care Provider" under the Plan and whether she had presented "objective medical evidence" as both these terms are defined by ARIC's STD Plan. On July 25, 2005, ARIC sent Dr. Kenneth Moon (Dr. Moon), Manning's physician and an approved health care provider, a letter stating, "Please note, that your patient's continued employment is dependent upon us receiving clarification of her condition from you." Pl. SUF ¶ 14; Def. App. 125. On July 29, 2005, Jodi Lanipher (Lanipher), an ARIC human re-sources employee, prepared notes of her telephone conversation with Dr. Moon. Lanipher's notes state that "[i]f [Manning] plans to return to work next week and is o.k. with her STD claim as it stands now then she doesn't need to set up an [appointment] with Dr. Moon." Def. App. 127. On August 1, 2005, Dr. Moon adopted the recommendation of physician's assistant Andra Kennedy that Manning could not return to work until September 2005. On August 6, 2005, Dr. Moon faxed his medical notes to ARIC.

On August 8, 2005, ARIC sent a letter to Manning denying her STD claim stating that, if Manning did not return to work by August 15, 2005, "[ARIC's] records will be noted to reflect that you have abandoned your position with [ARIC]...." Pl. SUF ¶ 23; Def. App. 144. The August 8 letter did not mention that Manning was required to bring a work release when she reported for work. Manning appealed ARIC's decision on August 12, 2005, but reported to work on August 15, 2005, consistent with ARIC's August 8 letter; however, ARIC sent Manning home for failure to provide medical certification that Manning was able to return to work. ARIC had a general unwritten policy that all employees must obtain medical certification before returning to work in order to assure that ARIC would not have liability if Manning's health condition resulted in further complications at work.[1] There is no evidence in the record that ARIC ever varied from this unwritten policy for any employee.

ARIC affirmed its denial of STD benefits on August 29, 2005, stating it lacked objective medical evidence to support her STD claim. ARIC's August 29 letter to

---

1. The ARIC STD benefits plan included a written policy requiring such a medical certification upon return from STD, see discussion *infra;* but since STD was denied, the more general procedure is implicated.

Manning explained that Manning had two options:

1. Return to work on Wednesday, August [31], with certification from your [A]pproved Health Care Provider that you are able to return to work.

2. Provide us with *objective* medical information, from your [A]pproved Health Care Provider, that you are disabled from performing your job duties.

Def. App. 149 (emphasis in original).

ARIC's STD benefits plan states that "[a] decision on STD eligibility will not be made until objective medical evidence to support [the] disability is received by the enterprise." Def. App. 97. The STD benefits plan further states that any employee returning to work following a leave due to a "Medically Certified Health Condition" must provide a statement from an approved health care provider releasing him or her to return to work, with or without restrictions, before the employee is allowed to return to active employment. As noted, independent of ARIC's STD Plan, ARIC has a general policy requiring certification from an approved health care provider medically clearing an employee to return to work after that employee has taken an extended leave of absence based on medical reasons. On August 30, 2005, Manning informed ARIC that she had an appointment with Dr. Moon for the morning of August 31, 2005. Manning went to her appointment with Dr. Moon, who did not release her for work at that time and extended her disability period for an additional month. On September 6, 2005, ARIC sent Manning a letter stating that ARIC was terminating her employment effective August 31, 2005. Under ARIC's STD Plan, terminated employees are not eligible for STD benefits.

Manning was released to return to work without any restrictions in October 2005.

Manning never applied for long-term disability (LTD) benefits from ARIC. Manning would not have been eligible for LTD benefits if she had remained employed with ARIC because the six-month STD period would not have expired by October 2005.

Manning filed this action, bringing (1) a claim for judicial review of ARIC's denial of her STD benefits under the Employee Retirement Income Security Act (ERISA), pursuant to 29 U.S.C. § 1132(a)(1)(B) (Count One); (2) an ERISA retaliation claim asserting ARIC terminated Manning based on her application for STD benefits, pursuant to 29 U.S.C. § 1140 (Count Two); and (3) a claim that ARIC's wrongful termination prevented her from obtaining future rights and benefits under ARIC's LTD benefits plan (Count Three). The Court resolved Count One and affirmed ARIC's denial of Manning's STD application in a previous order on February 24, 2009 (Clerk's No. 47). Defendant filed this Partial Motion for Summary Judgment on Counts Two and Three of Manning's complaint, arguing no genuine issues of material fact remain for trial and it is entitled to judgment as a matter of law. Manning resists.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment must be granted if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Walnut Grove Partners, L.P. v. Am. Fam. Mut. Ins. Co.*, 479 F.3d 949, 951–52 (8th Cir. 2007). "In considering a motion for summary judgment the court does not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue." *Thomas v. Corwin*, 483 F.3d 516, 526–27 (8th Cir.2007). Rather,

the Court focuses "on whether a genuine issue of material fact exists for trial—an issue of material fact is genuine if the evidence is sufficient to allow a reasonable jury verdict for the nonmoving party." *Morris v. City of Chillicothe,* 512 F.3d 1013, 1018 (8th Cir.2008) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The party seeking summary judgment initially bears the burden of demonstrating the absence of any genuine issue of material fact based on the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. If the moving party satisfies its burden, the nonmoving party must go beyond the pleadings and, by affidavits or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is genuine issue for trial. *See* Fed. R.Civ.P. 56(c), (e); *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505. "The mere existence of *some* alleged factual dispute between the parties will not defeat a motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505. An issue is "genuine" if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. 2505. The substantive law determines what facts are material; "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Wells Fargo Fin. Leasing, Inc. v. LMT Fette, Inc.,* 382 F.3d 852, 856 (8th

Cir.2004). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Menz v. New Holland N. Am., Inc.,* 507 F.3d 1107, 1110 (8th Cir.2007) (quoting *Thomas,* 483 F.3d at 527.)

## B. ERISA Retaliation Claim (Count Two)

Section 510 of ERISA makes it unlawful for an employer to discharge a participant in an employee benefit plan "for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. While Manning's complaint appears to present Count Two as an ERISA interference claim, in resisting ARIC's Motion for Summary Judgment, Manning argues Count Two is instead an ERISA retaliation claim. Manning can establish ERISA-based retaliation through direct evidence, or in the absence of direct evidence of an employer's deliberate interference with STD benefits, the Court analyzes § 510 interference claims using the *McDonnell Douglas*[2] three-part burden-shifting analysis common to Title VII and ADEA cases. *See Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Libel v. Adventure Lands of Am., Inc.,* 482 F.3d 1028, 1035 n. 7 (8th Cir.2007) (holding because "[the plaintiff's] ERISA claim is based on alleged circumstantial evidence ... [the Eighth Circuit analyzed the claim] under the *McDonnell Douglas* framework").

### 1. Direct Evidence

■ Manning may produce direct evidence of discrimination, which is "evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by

2. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Russell v. Kansas City, Mo.*, 414 F.3d 863, 866 (8th Cir.2005). "If there is direct evidence of … discrimination, the burden rests with the employer to show that it more likely than not would have made the same decision without consideration of the illegitimate factor." *Kratzer v. Rockwell Collins, Inc.*, 398 F.3d 1040, 1046 (8th Cir.2005) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)). The employee "may proceed under *Price Waterhouse* if she produces direct evidence of conduct or statements by persons involved in the decision-making process, which indicate a discriminatory attitude was more likely than not a motivating factor in the employer's decision." *Kratzer*, 398 F.3d at 1045–46.

■ Manning argues ARIC's August 29 letter is direct evidence that ARIC terminated Manning's employment because of her application for STD benefits. Manning argues that ARIC presented her a "Hobson's choice":[3] Manning could either present objective medical evidence supporting her STD benefits claim or obtain a medical certification from her doctor relinquishing her STD benefits claim. Manning argues that other circuits have considered such a Hobson's choice as direct evidence supporting a Section 510 claim. *See Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 298 (7th Cir.1998) (holding that a "company policy which forced an employee to choose between losing his job for the exercise of his rights under ERISA-protected benefits or keeping his job and forcing him to give up his benefits would be essentially unfair or 'a quintessential Hobson's choice'") was direct evidence supporting a Section 510 claim (citing *Kowal-*

ski v. L & F Prods., 82 F.3d 1283, 1288 (3d Cir.1996)). The record herein does not support Manning's position.

The August 29 letter, by its own terms, does not demand Manning relinquish her STD benefits claim and return to work or face termination. Rather, the August 29 letter communicates that Manning could still receive STD benefits for the time period between April 26 and August 31 whether (1) she reported for work with a note from an approved health care provider certifying that she can medically work or (2) she did not report for work and produced a note from an approved health care provider containing objective medical evidence supporting her STD claim. If Manning provided objective medical evidence from her approved health care provider, Manning would be entitled to STD benefits beginning on April 26 until her approved health care provider permitted Manning to return to work. Just as the court in *Lindemann* concluded there was no Hobson's choice, this Court similarly concludes "it is obvious that [the employer] never ordered [the employee] to give up her short-term disability benefits or risk being fired." *Lindemann*, 141 F.3d at 298. *Lindemann* acknowledges that Section 510 does not prevent an employer from implementing and executing legitimate business interests under ERISA. *Id.* ("[S]ection 510 is not intended to prevent an employer from firing an employee due to excessive absenteeism which ultimately harms productivity, but to prevent that employer from discharging or harassing an employee with the specific intent of preventing the employee from obtaining vested pension rights." (internal quotations omitted)).

■ ARIC has an unwritten general policy requiring certification from a medi-

---

**3.** A "Hobson's choice" is defined as "something one must accept through want of any real alternative." *United States v. Blum*, 65

F.3d 1436, 1442 (8th Cir.1995) (quoting Webster's Third Int'l Dictionary (3d ed. 1971)).

cal doctor that an employee who has taken an extended medical leave of absence is medically able to resume work. Manning concedes that employers routinely require employees to submit medical certifications after lengthy absences. The request for a medical certification form does not establish a causal link between the alleged discriminatory animus—retaliation against Manning for claiming STD benefits—and the challenged decision—ARIC's termination of Manning's employment when she failed to submit a medical-certification form permitting her to resume work. An employer's requirement that an employee provide a medical certification form as a condition of returning to work does not reflect a discriminatory animus contemplated under Section 510. *See Krensavage v. Bayer Corp.*, 314 Fed.Appx. 421, 426 (3d Cir.2008) (unpublished decision) (affirming summary judgment on a Section 510 claim because "the undisputed facts [were] that [the employee] did not receive medical clearance to return to work ..."); *Mundale v. Lockheed Martin Corp.*, No. 8:08–cv–217, 2009 WL 179632, at *4 (M.D.Fla. Jan. 26, 2009) ("Mundale was not terminated until after Cigna denied her request for short-term disability benefits and she refused to return to work or provide medical documentation excusing her from work.... [Therefore] Mundale's claim fails because she has not established a prima facie case of unlawful termination under Section 510."); *Pough v. SBC Commc'ns, Inc.*, 570 F.Supp.2d 1006, 1019 (N.D.Ill.2008) (granting summary judgment on a Section 510 claim was proper, in part, because the employee "fail[ed] to ... [submit] either a medical release or further documentation of her need to remain on medical leave").

The fact that the policy was unwritten does not change the Court's analysis as long as the policy is applied to all employees. The Eighth Circuit has held that (1) unwritten policies are permissible in the workplace, and (2) even if the employer deviates from its unwritten policy, the employee must prove that the deviation from the unwritten policy occurred on account of a discriminatory reason. *See Chock v. Nw. Airlines, Inc.*, 113 F.3d 861, 864–65 (8th Cir.1997) (affirming summary judgment in the employer's favor where the employee presented no evidence that the employer's deviation from its established promotion policies occurred due to racial discrimination). Here, since ARIC's medical certification requirement does not violate Section 510,[4] ARIC's requirement that Manning produce this certification is not direct evidence that ARIC violated Section 510.[5] In the absence of some improper

---

**4.** Lanipher's July 25 notes do not change the Court's analysis. Therein, Lanipher informed Manning that "[i]f [Manning] plans to return to work next week and is o.k. with her STD claim as it stands now then she doesn't need to set up an [appointment] with Dr. Moon." (Def. App. 127). Lanipher's notes simply indicate that if Manning wanted to receive STD benefits, she needed to make an appointment with Dr. Moon to obtain objective medical evidence supporting her STD claim. Nothing in Lanipher's notes generates a factual issue that Manning would be exempted from ARIC's general medical certification requirement if she had been willing to relinquish her STD claim.

**5.** Manning argues this Hobson's choice informs the *McDonnell Douglas* analysis as well. Both positions cannot be maintained. If the medical certification requirement is permitted under ERISA, Manning did not comply with that requirement, and ARIC's disability determination was made in good faith, then as a matter of law Manning cannot establish that ARIC's legitimate, nondiscriminatory reason was pretextual. *See, e.g., Godfrey v. BellSouth Telecoms.*, 89 F.3d 755, 759 (11th Cir.1996) ("[A]n employer may demand that an employee return to work after determining that the employee is not disabled, and then discipline that employee for unexcused absences. The employer does not violate ERISA Section 510 just because a court later

deviation from ARIC's unwritten medical work release policy permitted under ERISA, Manning has provided no "evidence showing a specific link between the alleged discriminatory animus and the challenged decision sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Russell,* 414 F.3d at 866, quoting *Griffith v. City of Des Moines,* 387 F.3d 733, 736 (8th Cir.2004). Thus, the Court is unable to find direct evidence of discrimination on this record.

### 2. *McDonnell Douglas* Framework

If Manning cannot present direct evidence supporting retaliation under Section 510, then the *McDonnell Douglas* burden-shifting framework controls the claim. A prima facie Section 510 interference claim requires Manning to show that (1) ARIC subjected Manning to an adverse employment action, (2) Manning was engaged in a protected activity by applying for ERISA-protected benefits, and (3) there was a causal connection between the adverse employment action and the participation in the statutorily protected activity. *Fischer v. Andersen Corp.,* 483 F.3d 553, 556 (8th Cir.2007); *Montgomery v. John Deere & Co.,* 169 F.3d 556, 561 (8th Cir.1999); *Kinkead v. Sw. Bell Tel. Co.,* 49 F.3d 454, 457 (8th Cir.1995). That done, the burden shifts to ARIC to articulate a legitimate, nondiscriminatory reason for the termination. *Fitzgerald v. Action, Inc.,* 521 F.3d 867, 871 (8th Cir.2008). If ARIC does so, the burden shifts back to Manning to prove the proffered reason was pretextual. *Id.*

ARIC does not dispute for purposes of this Motion that Manning can establish the first two elements of the prima facie case. ARIC does argue, however, that (1) there was no causal connection between the adverse action and her application for ERISA-protected STD benefits, and (2) even if Manning presents a prima facie case under Section 510, ARIC had a legitimate and nondiscriminatory reason for terminating Manning's employment.

#### a. Causal Connection Element of Prima Facie Case

■■■ Manning can establish a prima facie case of interference with insurance benefits under Section 510 if she demonstrates a causal connection between her application for ERISA-protected STD benefits and her termination. *Kinkead,* 49 F.3d at 457. "[T]he kind of causal connection required for a prima facie case is not 'but for' causation, but rather, a showing that an employer's 'retaliatory motive played a part in the adverse employment action.'" *McBurney v. Stew Hansen's Dodge City, Inc.,* 398 F.3d 998, 1003 (8th Cir.2005) (quoting *Kipp v. Miss. Highway & Transp. Comm'n,* 280 F.3d 893, 897 (8th Cir.2002)) (FMLA case). Manning's burden "is not onerous and the showing need not be made by a preponderance of the evidence." *Wallace v. Sparks Health Sys.,* 415 F.3d 853, 860 (8th Cir.2005).

Manning seeks a retaliatory motive contending that Patricia Anderson, an ARIC human resources employee, "has testified that her requirement was specifically that Manning was required to obtain from [Dr. Moon], and no other, either a release to return to work or objective medical evidence to justify inability to perform her job duties." Pl. Resp. Br. at 13. Manning argues this creates a causal connection between ARIC's denial of STD benefits and Manning's termination because, while under the STD benefits plan Manning could have seen *any* approved health care provider, Anderson interpreted the plan to include only Dr. Moon, who had already made a disability determination and could

determines that the employer's good faith dis- ability determination was wrong.").

not clear Manning to return to work. The record does not support Manning's interpretation that ARIC precluded Manning from visiting another approved health care provider. At her deposition, Manning's counsel asked Anderson, "And she's required to return to work then—says required to return to work with certification from Dr. Moon that she's able to return to work?," and Anderson responded simply, "Yes." Pl. App. 23. This testimony is not sufficiently direct to provide the factual basis for the argument Manning now asserts. The question did not ask whether Dr. Moon was the *only* approved health care provider that Manning could have asked for a work release, which would establish Manning's prima facie case. This colloquy between Manning's counsel and Anderson does not establish the necessary causal connection between Manning's STD application and her termination because it does not establish that ARIC deviated from their medical certification policy.

Manning further argues that ARIC required a work release when ARIC produced no policy requiring such a release and that Anderson relied on the STD policy provision for requiring an approved health care provider to certify that the employee's medically certified health condition no longer impairs the employee from working. Manning asserts that reliance on such a policy is evidence of an improper motive. The record does not support this assertion. Anderson's deposition relies on a more general company policy applying to anyone—irrespective of whether they applied for ERISA benefits—before returning to work. An unwritten work release policy does not demonstrate any impermissible motive; rather, only unwritten policies that are not consistently applied constitute evidence of an impermissible motive required for a prima facie case. *See Chock*, 113 F.3d at 864–65 (holding that an employer's unwritten employment policy does not demonstrate an

impermissible discriminatory motive). ARIC's general medical certification policy, which includes both ERISA-based medical absences and non-ERISA-based medical absences, as a matter of law cannot support a causal connection between Manning's termination and her application for STD benefits.

Manning also argues that ARIC's request that Manning produce a medical certification that she could return to work would require Manning to return to work against Dr. Moon's opinion, thus demonstrating ARIC's intent to discriminate against her. However, this claim is not actionable under ERISA because it does not violate any provisions of ARIC's STD Plan. *See Koons v. Aventis Pharm., Inc.*, 367 F.3d 768, 776 (8th Cir.2004) ("ERISA ... is not a mechanism through which general claims of wrongful termination can be brought.").

Lastly, Manning argues ARIC's request for the medical certification form establishes the requisite causal connection between Manning's application for STD benefits and ARIC's termination because it was a post hoc reason. *See Kobrin v. Univ. of Minn.*, 34 F.3d 698, 703 (8th Cir.1994). Although the August 29 letter does not provide the basis of ARIC's general medical certification policy, that does not support an inference that any attempted explanation of that policy would be a post hoc reason that would support an inference of discrimination. Anderson's proffered reason for ARIC's general medical certification policy was that it protects the employees from returning to work for financial reasons even though it is possible that a non-qualifying medical disability could worsen by returning to work. Other than being an unwritten policy, as discussed above, no fact issue has been generated on this record to suggest the policy

was manufactured in response to this claim.

ARIC's general medical certification policy is a common means both to protect ARIC from potential liability and to protect ARIC's employees from on-the-job injuries that could result from their medically unauthorized premature return to work. *See Johnson v. Univ. of Iowa,* 431 F.3d 325, 329–30 (8th Cir.2005) (noting that medical release policies are presumptively reasonable unless applied in a discriminatory manner). The facts that (1) ARIC required a work release form from a doctor before returning to work, and (2) ARIC's STD Plan required objective medical evidence to qualify for benefits are not inconsistent. Accordingly, the Court concludes that Manning has failed to show a causal connection between Manning's termination and ARIC's denial of Manning's STD benefits. Therefore Manning has failed to present a prima facie case of retaliation under Section 510.

### b. Non–Discriminatory Reason and Pretext

██ Assuming *arguendo* Manning had presented a prima facie Section 510 retaliation case,[6] the *McDonnell Douglas* burden-shifting framework requires ARIC to provide a legitimate, nondiscriminatory reason supporting Manning's termination. *See Fitzgerald,* 521 F.3d at 871 (describing the second prong of *McDonnell Douglas* burden-shifting analysis). ARIC's stated reason for terminating Manning's employment after denying Manning's appeal was Manning's failure to submit a work release form, which resulted in Manning being ineligible to work and thus caused her to accrue three unexcused absences. *God-*

*frey,* 89 F.3d at 759 (holding that after the employer determined the employee was not disabled, the employer had a legitimate, nondiscriminatory reason to terminate the employee for unexcused absences under Section 510). This is a valid, nondiscriminatory reason supporting Manning's termination.

██ Since ARIC has rebutted the inference of discrimination arising from Manning's prima facie case, the burden shifts to Manning to prove ARIC's articulated justification is merely pretextual "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Fitzgerald,* 521 F.3d at 872 (quoting *Gavalik v. Cont'l Can Co.,* 812 F.2d 834, 853 (3d Cir.1987)). In determining whether summary judgment is appropriate, the Court must consider "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Girten v. McRentals, Inc.,* 337 F.3d 979, 982 (8th Cir.2003) (quoting *Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133, 148–49, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). "An employee may prove pretext by demonstrating that the employer's proffered reason has no basis in fact, that the employee received a favorable review shortly before he was terminated, that similarly situated employees who did not engage in the protected activity were more leniently treated, that the employer changed its explanation for why

---

6. The Eighth Circuit has permitted Court's to proceed to the pretext inquiry even when the Court concludes the plaintiff has not presented a prima facie under Section 510. *See Rath v. Selection Research, Inc.,* 978 F.2d 1087, 1090 (8th Cir.1992) ("[The Eighth Circuit]

doubt[s] that [the employee] has established a prima facie case of retaliation. However, [the employee's] failure of proof is even more obvious if we focus upon the third or pretext stage of the *McDonnell Douglas* inquiry.").

it fired the employee, or that the employer deviated from its policies." *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1052 (8th Cir.2006). Manning cannot rely on "mere conjecture" but must present evidence of specific intent to interfere with his rights. *Jefferson v. Vickers, Inc.*, 102 F.3d 960, 964 (8th Cir.1996); *see also* 29 U.S.C. § 1140 (stating that ERISA prohibits taking certain actions "for the purpose of interfering with the attainment of any right...."). "This specific intent is present where the employee's (future or present) entitlement to protected benefits is a motivating factor in the employer's decision." *Koons*, 367 F.3d 768, 777 (8th Cir. 2004). A motivating factor is one that has "a determinative influence on the outcome." *Id.* (quoting *Reeves*, 530 U.S. at 141, 120 S.Ct. 2097).

Manning argues ARIC's stated reason for terminating Manning is pretextual because ARIC's actual reason for terminating was her failure to provide a valid work release form from an approved health care provider, not "job abandonment" as stated in the August 8 letter. The August 29 letter clearly informs Manning that (1) she was not eligible for FMLA time because she had been an ARIC employee for less than twelve months, (2) she had exhausted her remedies regarding her STD application, and (3) she had three days to return to work or she would be terminated under the voluntary termination policy. ARIC's attendance policy treats excused medically-related absences as one occurrence. As applied to Manning, ARIC treated Manning's excused medical-absences between April 29 and August 28 as one occurrence. Once ARIC has determined that an absence is not excused, then each day the employee is absent counts as one occurrence. As applied to Manning, once ARIC determined Manning was not eligible for STD benefits, Manning had three days to report to work or she would be considered voluntarily terminated under ARIC's at-tendance policy. While Manning had been in contact with ARIC, ARIC would not excuse any additional absences unless Manning provided ARIC with (1) objective medical evidence supporting her disability or (2) a work release from an approved health care provider supporting her ability to return to work. On August 31, when Manning did not report for work for a third consecutive day, Manning was considered voluntarily terminated under ARIC's attendance plan. Although the Court finds no authority in the Eighth Circuit on point, persuasive authority supports ARIC's position that, in the absence of other evidence of pretext, the fact that ARIC applied a uniform medical certification policy to an employee and terminated a non-complying employee does not satisfy Manning's burden of proving pretext. *See, e.g., Walsh v. United Parcel Service*, 201 F.3d 718, 729–30 (6th Cir.2000) (employee was lawfully terminated because of failure to respond to employer's requests for medical information necessary to demonstrate entitlement to medical leave, not to avoid paying disability benefits); *Godfrey*, 89 F.3d at 759 (holding that an employer who has determined that the employee had not been under a disability can discipline that employee for subsequent unexcused absences and not violate Section 510); *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 41–42 (1st Cir.1995) (holding that the employer's determination that the employee's doctor did not provide a valid certification of disability was permissible; the employer could require that employee to return to work under Section 510; and that "[e]ven if [the employer] was mistaken in its evaluation of [the employee's] disability, as long as that determination was in good faith and formed the basis of the decision it is permissible under section 510"); *Hendricks v. Edgewater Steel Co.*, 898 F.2d 385, 389–90 (3d Cir. 1990) (rejecting the employee's attempt to

show pretext under Section 510 because the employee "was terminated ... after failing to ... indicat[e] his intent, in writing, to return to work when called"). Even if ARIC applied its medical work release policy inconsistently, which this record does not support, that still does not demonstrate pretext by itself under *McDonnell Douglas. Koons*, 367 F.3d at 779 ("To the extent [the employer] may have acted inconsistently in disciplining its employees, this does not prove an intent to interfere with his severance benefits. At most, ... it is merely some evidence of an unlawful motive...."). Manning has provided no evidence supporting any of the legally-established methods for rebutting ARIC's stated legitimate and nondiscriminatory reason for terminating Manning to establish that ARIC's proffered reason was pretextual under Section 510. *See Stallings*, 447 F.3d at 1052.

The Court concludes that assuming *arguendo* Manning had established a prima facie case of ERISA retaliation under Section 510 using the *McDonnell Douglas* burden-shifting framework, Manning failed to generate any fact issue that ARIC's proffered reason was pretextual.

## C. Interference with Future Benefits (Count Three)

 To prevail under her ERISA interference claim, Manning must show that (1) ARIC subjected her to an adverse employment action, (2) Manning was likely to receive future benefits, and (3) there was a causal connection between the adverse action and the likelihood of future benefits. *See Fischer*, 483 F.3d at 556. To establish a claim for interference with current or prospective benefits under Section 510, Manning must show ARIC "had a specific intent to interfere with [her insurance] benefits, but that may be shown by circumstantial evidence." *Register v. Honeywell Fed. Mfg. & Techs., LLC*, 397 F.3d 1130, 1136–37 (8th Cir.2005) (citing

*Regel v. K–Mart Corp.*, 190 F.3d 876, 881 (8th Cir.1999)).

Manning has admitted that she was ineligible for LTD benefits because she was released to return to work in October 2005. Manning also admitted that the six-month STD benefits period could not have expired by the time she became eligible for LTD benefits. The Seventh Circuit, under almost identical facts, persuasively rejected an employee's claim for interference with prospective LTD benefits, saying,

> To receive the long-term disability benefits that [the employee] sought under her insurance policy, she must have been "totally disabled," as defined by her insurance policy, for the duration of a ninety-day elimination period. Measured from her first day of disability on November 4, 1994, [the employee] would have been disabled for ninety days, and therefore become entitled to long-term disability benefits, on February 3, 1995. Fatal for her claim, [the employee's doctors] issued letters that authorized her return to work in December and January, before the ninety-day period lapsed. [The employee] appears to believe that her termination preempted the tolling of the ninety-day period for qualification, but the doctors' releases made her ineligible for long-term disability benefits well before then. [The employee's] termination and [the employer's] motivation for the termination are simply irrelevant. [The employee] cannot establish a prima facie case under § 510 of ERISA because she was not a member of the protected class for long-term disability benefits. The district court did not err in granting summary judgment.

*Feldman v. Am. Mem'l Life Ins. Co.*, 196 F.3d 783, 792 (7th Cir.1999).

The Court agrees with *Feldman*'s reasoning. Manning concedes that she could not have been eligible for LTD benefits because she obtained a release to return to

work before the six-month STD period had lapsed, and the Court concludes Manning's LTD interference claim fails as a matter of law. Accordingly, Manning cannot establish a prima facie Section 510 case for interference with LTD benefits because Manning *cannot* establish that she could have received LTD benefits, let alone was "likely to receive future benefits." *See Fischer*, 483 F.3d at 556. Manning has cited no authority to support a Section 510 claim based solely on an employee's own speculation about her future employment possibilities with her employer. In contrast, ERISA's public policy supports limiting relief under Section 510 to plaintiffs who can establish clearly ascertainable damages which are foreseeable. *See Howe v. Varity Corp.*, 36 F.3d 746, 756–57 (8th Cir.1994) (holding that ERISA provides relief only for clearly ascertainable damages with the intent to make plaintiffs whole, which precludes recovery for speculative future harm). The number of possible situations that could have affected Manning's employment with ARIC between August 2005, when Manning was denied STD benefits, and December 2006, when Manning was approved for social security benefits, renders unforeseeable any damages Manning could recover under Section 510. *See Feldman*, 196 F.3d at 792. Because Manning was never eligible for LTD benefits, her LTD benefits interference claim fails as a matter of law.[7]

### III. CONCLUSION

Viewing the evidence in the light most favorable to Manning, and in the absence of any genuine issues of material fact, Manning's ERISA claims fail as a matter of law. Therefore, ARIC's Motion for Partial Summary Judgment (Clerk's No. 46) must be **granted** as to Counts Two and Three. Manning's case is hereby **dismissed.** The Clerk of Court is directed to enter judgment for the Defendant and against the Plaintiff.

**IT IS SO ORDERED.**

---

7. To the extent that Counts Two or Three assert that ARIC interfered with Manning's ability to receive additional STD benefits, the Court's February 24, 2009, order concluding ARIC acted in good faith precludes a finding that ARIC acted with the specific intent to interfere with Manning's STD benefits. *See Godfrey*, 89 F.3d at 759 (holding that an employer's good-faith determination that an employee was not disabled prevented, as a matter of law, a finding that the employer acted pretextually). Additionally, the Court's conclusion regarding Count Two that ARIC did not retaliate against Manning based on her application for STD benefits precludes Manning's argument that ARIC had the specific intent to interfere with Manning's application for additional STD benefits.